## Gover, et al. v. Newton, et al.

(Decided June 17, 1913.)

### Appeal from Pulaski Circuit Court.

1. Local Option Election—County—Petition—Sufficiency.—When a local option election is sought in an entire county, the petition should be signed by a number of voters equal to 25 per cent of the votes cast in each of the precincts at the last preceding general election.

2. Local Option Election—Precinct—Transfer of Territory and Population—Petition—Requisite Number of Signers.—Where after the next preceding general election a new county is formed and a portion of the territory and population in a precinct in an old county is transferred to the new county, it is only necessary that the petition asking for a local option election in the old county be signed by a number of voters in the precinct equal to 25 per cent of those who voted at the next preceding general election, and still remain in the precinct.

3. Local Option Election—Petition—Right of Petitioners to Withdraw Their Names.—Persons who sign a petition for a local option election may withdraw their names from the petition at any time before it is acted on by the county court.

4.  Local Option Election—Submission of Case—Subsequent Hearing of Evidence—Right of Petitioner to Withdraw.—Where on petition for the calling of a local option election the case is submitted, the hearing of evidence thereafter on a disputed question of fact renders ineffective the order of submission, and does not deprive a petitioner of the right to withdraw his name from the petition before it is finally acted on.

ELBERT WESLEY, WESLEY & BROWN and DENTON & FLIPPIN for appellants.

O. H. WADDLE & SONS and W. M. CATRON for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

This appeal involves the validity of a local option election held in the county of Pulaski on December 10, 1912. After the election Sylvester Newton and others filed a contest. The contest board held the election valid. On appeal to the circuit court the election was adjudged to be invalid. From that judgment the contestees appeal.

The facts are as follows: On September 14, 1912, there was filed with the county court a written petition asking for an election to take the sense of the legal voters of Pulaski County on the proposition whether or not spirituous, vinous or malt liquors should be sold, loaned or bartered in such county, and that said law and prohibition apply to druggists. Application was made by written petition, signed by legal voters from each of the precincts in the county equal to 25 per cent of the votes cast in each of said precincts at the last preceding general election, which was held in November, 1911. On the calling of the case on the docket for hearing on September 16, 1912, ten of the signers in Beaver precinct No. 33 produced and filed in open court a written request to strike their names from the petition, and moved the court that this be done. At the same time the attorneys representing the "wets" moved the court to dismiss the petition asking for the election on the ground that there were only 47 votes cast at the preceding general election in Beaver precinct, and as only 20 legal voters from that precinct had signed the petition and ten had requested the withdrawal of their names, the number of signers remaining on the petition did not equal 25 per cent of the votes cast in that precinct at the next preceding general election. The attention of the court was then called to the fact that since the November election, 1911, the county of McCreary

had been created, and that the line separating that county from Pulaski County passed through Beaver precinct, thus transferring to McCreary County about one-half the territory and about one-half the population of Beaver precinct. Without passing on the question of the withdrawal or the striking of the names of the parties from the petition, the court adjourned in order that it might be advised what number of signers was necessary in order to constitute 25 per cent of the legal voters in Beaver precinct, and ordered that the case be closed on the facts as they then existed and that it be submitted for judgment. On September 20, 1912, the court re-convened, pursuant to adjournment, for the purpose of rendering judgment. The court entered an order appointing Wesley Collyer and Ben Branchcomb special commissioners to go to Beaver precinct for the purpose of ascertaining and reporting to the court the number of voters in said precinct who cast their votes at the last regular election in said precinct, and who, at the time of casting their votes, resided in that portion of the precinct which is now a part of Pulaski County. Branchcomb having declined to act as such commissioner, Huston Howard was appointed in his place. Howard also refused to act, and on September 24, 1912, Wesley Collyer presented and filed his report as such commissioner, fixing the number of voters who voted at the next preceding general election, and who, after the creation of McCreary County, still lived in Pulaski County in Beaver precinct, at 29. The contestants objected to the report of the commissioner being received, and asked that there be stricken from the petition the names of those who had asked that this be done, and that the petition asking for an election be dismissed. The court declined to pass on any of these questions, but continued the case until September 25th. When the case was called on that day, a request, signed by three of the original petitioners, was presented, asking that their names be stricken from the petition asking the election. The court refused to strike these names from the petition, but did enter an order striking from the petition the names of the ten petitioners who had previously asked that this be done. He then entered an order calling the election.

While a different rule prevails in cities and towns, it is well settled that when the election is proposed to be held in territory comprising precincts, the petition should be signed by a number of voters equal to 25 per cent of

the votes cast in each precinct at the last preceding general election. Kentucky Statutes, Sec. 2554; Nall v. Tinsley, 107 Ky., 441. The validity of the election in question, therefore, depends on whether or not the petition in question was signed by a number of voters in Beaver precinct equal to 25 per cent of the votes cast in that precinct at the next preceding general election. After the general election in November, 1911, the county of McCreary was created. A portion of Beaver precinct was transferred to that county. There remained in that precinct only about half of its former territory and population. The statute providing for the calling of such an election makes no provision for a case of this kind. It was never contemplated that where the population and territory of a precinct were transferred to another county there should still be required a number of signers equal to 25 per cent of the votes cast at the next preceding general election which occurred before such transfer. We therefore conclude that the county court properly held that it was only necessary to have the petition signed by a number equal to 25 per cent of the voters who voted at the November election, 1911, and who still lived in that part of Beaver precinct left remaining in Pulaski County. As the petition was originally signed by 20 voters, and the names of ten of these were stricken from the petition, there remained only ten signers. Even if we concede that the commissioner's report was correct, the number of voters who voted at the November election, 1911, and who still resided in Beaver precinct was 29. Had the names of the three additional petitioners who asked that their names be stricken from the petition been stricken therefrom, there would have remained only seven. Seven is not 25 per cent of 29. It follows that the validity of the election turns on the right of these petitioners to withdraw their names, and the propriety of the court's action in refusing to permit them to do so. We have, in a number of cases, refused to follow the rule announced by the Supreme Court of Arkansas in the case of Colvin v. French, 75 Ark., 154, and have held that one who signs a petition for a local option election had a right to withdraw his name at any time before the petition is acted on. O'Neal v. Minary, 125 Ky., 571; Davis v. Henderson, 127 Ky., 13; Barton v. Edwards, Judge, et al., 143 Ky., 713. It is insisted, however, that this rule does not apply under the facts of this case, because the case was actually submitted for judgment at the time the withdrawal of the three names was asked. While it is true

that an order was made submitting the case, it also ap-
pears that after it is claimed the case was submitted, the
court appointed a commissioner, who heard evidence on
the number of voters who voted at the November elec-
tion, 1911, and still remained residents of Beaver pre-
cinct after the formation of McCreary County. A case
cannot be said to be submitted when evidence is there-
after heard, unless consented to by the parties. In this
case there was no consent. The necessary effect of hear-
ing evidence on the question in dispute was to annul the
order of submission. That being true, it follows that the
three petitioners had the right to withdraw before the
petition was acted on.

Judgment affirmed.