**COY et al.**

**v.**

**HOOVER.**

Court of Appeals of Kentucky.

June 23, 1954.

Rehearing Denied Dec. 3, 1954.

McCann, Sledd & McCann, William H. McCann, Lexington, for appellant J. T. Coy.

Leer Buckley, Daniel N. Brock, Lexington, for appellant Paul Lyle Hood, Jr.

Eldon Dummitt, Lexington, Redwine & Redwine, Winchester, for appellee.

WADDILL, Commissioner.

This action arises from an automobile accident which occurred on the Newtown Road, approximately four miles north of Lexington, on the night of August 8, 1952, when an automobile being driven in a southerly direction by Paul Lyle Hood, Jr., collided head-on, near the center of the road, with an automobile being operated in a northerly direction by J. T. Coy. As a result thereof, Norma Jean Hoover, age 16, who was a guest passenger in Hood's car, sustained serious personal injuries and brought this action by her next friend, seeking damages against J. T. Coy and Paul Lyle Hood, Jr. Upon trial, a jury returned a verdict against both Coy and Hood, and awarded Miss Hoover the sum of $10,000. From a judgment entered thereon, Coy and Hood appeal, urging several grounds for reversal which will be considered during the course of the opinion.

It was shown by the evidence that in the early evening of August 8, 1952, the appellant, Paul Lyle Hood, Jr., 19 years of age, drove his automobile from Winchester to a drive-in picture show located near Georgetown. He was accompanied by James Riddell, Logan Paynter, Verda Jo Carroll, Carol Rice, and the appellee, Norma Jean Hoover, all of teen-age, from Winchester.

Before arriving at the picture show, a stop was made at a tavern where some beer was purchased. All of these young people, except Riddell, participated in consuming various portions of the beer. Logan Paynter testified that two stops were made for beer, and that Hood drank two or three bottles of beer on each occasion, but he is contradicted by the other young men and women in the car. They then proceeded to the picture show and viewed a double-feature, leaving there about 11:00 p.m., to return to their homes in Winchester. On their return trip Hood was driving, with Verda Jo Carroll next to him, Norma Jean Hoover was next to her, and James Riddell was seated next to the door in the front

seat, with Paynter and Miss Rice in the rear seat. According to the various estimates of the passengers in Hood's car, Hood drove his automobile from 50 to 70 miles per hour. There was evidence that Miss Hoover, and other passengers in the car, had asked Hood to reduce the speed of his automobile. Although Miss Hoover testified that Hood consented to that request, it is apparent that Hood was traveling at a rapid rate of speed at the time of the accident.

According to Misses Hoover and Carroll and James Riddell, Hood was driving on his right side of the road, and when Hood's automobile reached a straight stretch of road about four miles north of Lexington, a car approached them from the south on their side of the road, colliding into the front of Hood's automobile. The testimony of Miss Rice and Paynter as to what occurred immediately before the accident was of a negative character as they were apparently paying little attention to the road or to Hood's operation of his car. Hood did not testify. As all occupants of Hood's car were rendered unconscious by the collision, we now look to other evidence concerning the accident.

J. T. Coy, age 22, testified that he left Lexington in his car shortly before 11:00 p.m. accompanied by Charlie Overly. Coy stated that when he reached a straight section of road about four miles out of Lexington, he saw the lights of an automobile approaching him at a distance of about 600 feet; that he continued driving his car on the right side of the road at about 30 miles per hour, and when the automobiles were 60 to 70 feet apart, he realized that the approaching automobile was on the wrong side of the road and was traveling at a speed he estimated to be 55 miles per hour. Coy said that in an attempt to escape being struck by the Hood automobile, he cut his car to the left, but was met almost head-on by the Hood car. His evidence is supported by the testimony of his companion, Overly, who admitted he had one beer, but said that Coy had not been drinking and was sober. However, two county patrolmen who arrived at the scene of the accident shortly after the collision say otherwise. Patrolman Gene Haynes testified that he talked with Coy and in his opinion Coy was under the influence of liquor. The other officer, Carl Powell, stated that he smelled liquor or beer on Coy.

The photographs, filed as exhibits, and physical facts tend to establish that the automobiles met head-on near the center of the road. Conceding that the evidence as to the marks and tracks on the west side of the road was indicative that the automobiles collided on Coy's side of the road, yet appellee's evidence put the matter in issue, so we conclude that the question of responsibility for the accident was for the jury to determine, even though the weight of the evidence on this particular point was for the appellant, Coy.

There was evidence showing that Miss Hoover had met Hood at Boonesboro Beach on the afternoon of August 8th, and that she knew that Hood had consumed several beers. Miss Hoover admitted this, and further that she rode to Winchester later that afternoon with Hood and during that trip Hood had driven his car at times at very rapid rates of speed.

The appellant, Coy, first contends that there was not sufficient evidence of his negligence to submit the case against him to the jury, and, therefore, the court erred in failing to direct a verdict in his favor. This contention is wholly without merit, because several witnesses testified that Coy was operating his automobile on the wrong side of the road. When this testimony is considered in the light of the testimony of the two county patrolmen, which was to the effect that Coy was intoxicated, and the testimony of appellee's witnesses who stated that Hood's car was being driven on its right side of the road, the issue as to who was at fault was clearly one for the jury to determine. On the question of Coy's negligence, we find that evidence was sufficient to take the case to the jury, and to sustain the verdict against him.

Both Coy and Hood urge that Norma Jean Hoover was guilty of contributory

negligence as a matter of law for the following reasons:

"(a) She was riding in an automobile operated by a driver known by her to be under the influence of alcohol; (b) She was riding in an automobile operated by a person whom she knew to be a fast and reckless driver; (c) She failed to properly apprise the driver of the danger of driving at such excessive rates of speed; (d) She continued riding in that vehicle after she had several opportunities to get out of it, knowing that it was being operated in a careless, reckless, and dangerous manner; (e) and she was one of four well-developed teen-agers in the front seat so crowding the driver that he was unable to control his vehicle properly."

By insisting upon ground (a), the appellants apparently believe that it was established beyond contradiction that Hood was drunk and that Miss Hoover knew, or by the exercise of ordinary care should have known, that fact. However, the evidence does not warrant such a conclusion. The only witness who suggests that Hood was under the influence of alcohol was Logan Paynter. The other passengers in Hood's automobile testified Hood was sober. Neither of the county patrolmen, nor the appellant, Coy, claim that Hood was intoxicated. The question of whether or not Hood was intoxicated was submitted to the jury under instruction No. 2, and the court fully and completely instructed the jury on the issue of Hood's intoxication and the duty the law imposed upon Miss Hoover. Since we find no error was committed in this respect, we shall now consider the appellants' grounds designated (b), (c), and (d), which in substance assert that Miss Hoover was guilty of contributory negligence as a matter of law in riding in Hood's automobile as she knew he was a fast and reckless driver and did not exercise ordinary care in her own behalf.

The evidence established that Hood operated his automobile 50 to 70 miles per hour at various times while enroute on this trip. But it established that Miss Hoover, and other passengers in the Hood automobile, protested to Hood about his fast driving and that on each occasion when the protests were made, Hood reduced the speed of his car.

The duty imposed by law upon Miss Hoover as a guest in the automobile was the exercise of ordinary care for her own safety. Toppass v. Perkins' Adm'x, 268 Ky. 186, 104 S.W.2d 423; Stephenson's Adm'x v. Sharp's Ex'rs, 222 Ky. 496, 1 S.W.2d 957. What constitutes ordinary care on the part of an invited guest in an automobile necessarily depends upon the facts and circumstances of each case. In view of the fact that protests were made to Hood concerning the manner in which he was operating his automobile, we cannot say as a matter of law that Miss Hoover was guilty of contributory negligence. The court properly submitted this question to the jury. Bybee v. Shanks, Ky., 253 S.W.2d 257; Chambers v. Hawkins, 233 Ky. 211, 25 S.W.2d 363.

Aside from the fact that we think it was a question for the jury as to whether or not Miss Hoover exercised ordinary care and caution under all the proof in the case, another cogent reason appears why the court could not hold as a matter of law that Miss Hoover was guilty of contributory negligence. The appellant, Coy, testified that the sole cause of the collision was the fact that Hood's car was being operated on the wrong side of the road. Appellee's witnesses testified that the accident was due to Coy's driving his car upon Hood's side of the road. No one claims that the speed of Hood's car was the proximate, or even a contributing cause of the accident. Thus if Hood had operated his automobile on its proper side of the road, its speed, even though it may have exceeded the legal rate, could have played no part in causing the accident. Therefore, it follows that there can be no contributory negligence on the part of Miss Hoover in this respect, unless the excessive speed of Hood's car had a direct and proximate causal relation to the accident. Brown v. Crumpton, Ky., 252 S.W.2d 670. There is no claim made, nor

could one be successfully asserted under this record, that Miss Hoover was contributorily negligent in causing Hood to operate his car on the wrong side of the road.

Appellant insists that Miss Hoover knew that Hood was a fast driver and with knowledge of that fact, entered the automobile Hood was driving and rode with him. In this jurisdiction, the rule is that a passenger is not guilty of negligence as a matter of law in riding in an automobile of one known to him to be a fast driver, where the passenger requests the driver to operate his car carefully. New York Indemnity Co. v. Ewen, 221 Ky. 114, 298 S.W. 182. In 38 Am.Jur., Negligence, Sec. 173, p. 848, the rule is stated thusly:

"* * * There is no assumption of risk on the part of an invited guest in an automobile from the mere knowledge that the driver on former occasions has so driven his automobile as to indicate that he is likely to drive recklessly. * * *."

Applying this rule to the state of facts before us, we must reject the appellants' argument that Miss Hoover assumed the risk.

In support of ground (e), the appellants urge that Miss Hoover was guilty of another act of contributory negligence in that she was one of four persons riding in the front seat of Hood's automobile. The claim is made her act in this respect was in violation of KRS 189.470(1), which provides:

"No person shall operate a vehicle when it is so loaded, or when there are in the front seat such number of persons, exceeding three, as to obstruct the the view of the operator to the front or sides of the vehicle or as to interfere with the operator's control over the vehicle."

In Clark v. Finch's Adm'x, Ky., 254 S.W.2d 934, 937, which was an automobile accident case, it was shown that there were six persons occupying the cab of Finch's truck at the time of the collision. In considering

the effect to be given to KRS 189.470(1), we said:

"Under the express provisions of the statute, it is unlawful to operate a vehicle with more than three persons in the front seat if the excess number obstruct the view of the driver to the front or sides of the vehicle, or interfere with his control. The circumstances of the accident were such as to suggest the possibility that there was an interference with the driver's control of the Finch truck, and it was prejudicial to omit from the instruction one of the statutory conditions which made it unlawful to operate the vehicle with the number of occupants which were shown."

Although there was evidence to the effect the persons occupying the front seat did not interfere with Hood's operation of his car, we observe that the court submitted that question to the jury, and followed the directions given in the Finch case. We find no error in the instruction given.

The appellants further contend that the closing argument of appellee's counsel was inflammatory, unsupported by the record, and prejudicial. The record shows that the objections made by the appellants' counsel were sustained by the court. No request was made of the court to admonish the jury, nor does it appear that a motion to discharge the jury was interposed.

In Dale v. Peden, Ky., 252 S.W.2d 687, 691, we said:

"* * * when one raises a question concerning the improper conduct of opposing counsel, it must appear from the record that he not only objected at the time but that he requested the court to properly admonish the jury with reference to the act or words on which the complaint is based or, in extreme cases, that he moved the court to dismiss the jury and continue the case. Dale's attorney objected to the remarks of opposing counsel, which objection was sustained by the court.

The judge granted him all the relief he requested, and in view of this no error was committed by the lower court."

Under the state of the record we think that the appellants cannot now avail themselves of this ground for a reversal of the judgment.

A further complaint is made by the appellants that the guardian ad litem of the appellant, Hood, was not given adequate time to prepare his defense. The record shows that both appellants were ably represented by astute counsel and that every possible defense was interposed in behalf of both Hood and Coy, and that each of them was afforded a fair trial. Perceiving no error prejudicial to the appellants' substantial rights, the judgment is affirmed.